JENNIE LETTAU, petitioner,

*v.*

EMIL LETTAU, defendant.

[Decided June 17th, 1918.]

1. Where a husband, who had willfully and continuedly deserted his wife, came to his wife's place of business and offered to take her to Europe if she had money to pay the expenses, and she told him she had no money, but would live with him in America, to which he replied that he was "through with her" and "wanted to have nothing more to do with her," whereupon the wife asked him to sign a paper to that effect, such request did not amount to an acquiescence in the separation on the part of the wife or deprive the desertion of its obstinate quality.

2. Nor did the fact that the wife, at the time of the original desertion, after the husband had expressed his intent to desert and after he had refused her pleas as well those of her mother, ask him to put his intention in writing, amount to acquiescence, or deprive the desertion of its obstinate quality.

3. *Grover* v. *Grover, 63 N. J. Eq. 774; Wilson* v. *Wilson, 66 N. J. Eq. 237,* followed.

On petition for divorce.   On exceptions to master's report.

*Mr. William B. Davidson,* for the petitioner, exceptant.

LANE, V. C.

The learned special master found the desertion continued and willful, but not obstinate. I agree with his finding that the desertion was continued and willful for the required time and I have come to the conclusion that it was also obstinate.   The master based his conclusion upon the facts that at the time of the desertion, in March, 1912, after the husband had expressed his deliberate intent to leave his wife forever, and after he had refused her pleas and those of her mother to remain with her, the wife asked him to put his intention in writing, and that in 1914 when the husband came to the place of business of the wife and told her that, if she had the money to pay the expenses, he would take her to Europe, and upon her statement that she had no money but that she would live with him in America he had then said that he was through with her and wanted to have nothing more to do with her, she again asked him to put the statement in writing so that they might live separate.   The master distinguishes *Grover* v. *Grover, 63 N. J. Eq.* (at *p. 774*), and *Wilson* v. *Wilson, 66 N. J. Eq. 237,* upon the ground that in this case the attitude of mind of the wife was communicated to the husband. Vice-Chancellor Stevenson, in *Wilson* v. *Wilson,* laid stress not so much upon the mere communication of the attitude of the wife to the husband as the effect upon the husband's mind.   In the case at bar, the husband, as the master found, was a shiftless individual, he never supported his wife properly; in 1910 he abused her physically; she left him but returned after a short absence and lived with him until March, 1912, when he deliberately went.

The wife had been advised by a lawyer in 1910 when she was contemplating a suit for separation and maintenance that it was advisable for her to have the consent of her husband, and it was undoubtedly with this advice in mind that, failing in her efforts to induce her husband to remain, she asked him to sign the paper which would express his intention to leave, and, unquestionably, this same idea was in her mind in 1914. In both instances the request to sign the paper came after an absolute refusal on the part of the husband to live with her. She in reality asked no more than that he put in writing what he had expressed orally. I cannot see that what the wife did amounted to an acquiescence in the separation or that it had any effect whatever upon the mind of the husband.

Exceptions will be sustained and a decre *nisi* advised.

This case has been slumbering for an unreasonable space of time. I wish counsel would present decree at once.